JOHNSON et al. v. FT. WORTH DRIVING CLUB.

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 20, 1913. Rehearing Denied Feb. 14, 1914.)

1. LANDLORD AND TENANT (§ 134*)—LEASE — COVENANTS RUNNING WITH THE LAND — GAMBLING AND SELLING OF INTOXICANTS.

Covenants in a lease that no illegal gambling and no selling of intoxicating liquors should be permitted on the premises during the lease, and that upon breach thereof the lessor might forfeit the lease and take possession, were covenants running with the land for breach of which the lessor's assignee and grantee had the right to forfeit the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 482–485; Dec. Dig. § 134.*]

2. LANDLORD AND TENANT (§ 134*)—COVENANT AGAINST GAMBLING AND SELLING INTOXICATING LIQUORS—FORFEITURE FOR BREACH—PERMIT.

Under a lease providing that no illegal gambling or any sale of intoxicating liquors should be permitted on the premises by the lessee or other persons during the lease, the lessee was not bound at all events, whether with or without knowledge, to prevent the sale of intoxicating liquors, under pain of forfeiture of the lease, but was only bound to exercise reasonable diligence to ascertain and prevent such sales, forfeitures not being favored by the law.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 482–485; Dec. Dig. § 134.*]

3. CANCELLATION OF INSTRUMENTS (§ 50*)—ACTION TO FORFEIT LEASE — QUESTION FOR JURY—CARE TO PREVENT SALE OF LIQUOR.

In an action to forfeit a lease for breach of a covenant against the sale of intoxicating liquors on the premises, held, on the evidence, that it was a question for the jury whether the lessee in good faith did all that was required by the exercise of reasonable care to prevent such sales.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 105, 106; Dec. Dig. § 50.*]

4. LANDLORD AND TENANT (§ 45*) — COVENANTS—FORFEITURE FOR BREACH—STATUTE.

Rev. St. 1911, art. 5489, forbids a sublease without the knowledge or consent of the lessor. A sublease was made several months before plaintiff, as grantee and assignee of the lessor, acquired any interest in the premises, and thereafter neither he nor the original lessor made any complaint thereof until the expiration of the sublease, and it did not appear that the estate was in any way injured by the sublease. Held, that the statute would not be read into the original lease and a forfeiture declared for breach of such implied covenant not to sublease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 111; Dec. Dig. § 45.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

5. TRIAL (§ 260*)—REQUESTED INSTRUCTIONS—GIVEN INSTRUCTIONS.

Requested instructions were properly refused, where the matters therein, so far as correct, were covered by the charges given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

Appeal from District Court, Tarrant County; Marvin H. Brown, Judge.

Action by Robert Johnson and others against the Ft. Worth Driving Club. Judgment for defendant, and plaintiffs appeal. Affirmed.

See, also, 144 S. W. 1041.

Robert Johnson was the grantee of the original lessor, David Evans, and the assignee of his rights under the lease.

Thompson & Barwise, of Ft. Worth, for appellants. Q. T. Moreland, of Ft. Worth, for appellee.

CONNER, C. J. A detailed history of this case may be found in the proceedings of former appeals. See 56 Tex. Civ. App. 162, 121 S. W. 213, and 103 Tex. 24, 122 S. W. 254, Ann. Cas. 1912D, 67. Only such general statement, therefore, will now be made as is deemed necessary to the present disposition.

In 1905 David Evans was the owner of a tract of about 32 acres of land situated near the city of Ft. Worth. During that year the land was leased by David Evans to the Ft. Worth Driving Club for a period of some 15 years, for the purpose of establishing thereon a driving park, race track, barns, and other improvements such as are required to operate a driving club, county fair, or other legitimate business. Among other covenants in the lease to the Ft. Worth Driving Club it was provided that "no gambling such as prohibited by law is to be permitted on said premises by said lessee nor shall any intoxicating liquors of any sort ever be permitted to be sold on said premises by said lessee or other persons during the continuance of this lease." And it was further provided that "upon failure to perform any covenants or agreements, lessor should have the right to re-enter and take possession and eject lessee, and lessee agrees to peaceably yield possession in event the lease is terminated before the expiration of the term." Thereafter during the year 1906 the Ft. Worth Driving Club, with the consent of Evans, leased the premises in question to the Ft. Worth Fair Association. In this lease, which was in writing, there was no provision which forbade either gambling or the sale of liquors because of which omission the Fair Association claimed, and began to exercise, the right of selling intoxicating liquors on the premises in controversy. Thereupon the Ft. Worth Driving Club sought and obtained a temporary writ of injunction restraining its lessee, the Ft. Worth Fair Association, from the inhibited sale, which injunction was, on appeal to this court,

dissolved May 22, 1909. See Ft. Worth Fair Association v. Ft. Worth Driving Club, 56 Tex. Civ. App. 162, 121 S. W. 213. A writ of error, however, was granted by our Supreme Court, which perpetuated the injunction on November 17, 1909. See 103 Tex. 24, 122 S. W. 254, Ann. Cas. 1912D, 67. Immediately after the rendition of the opinion of this court directing a dissolution of the writ of injunction the Fair Association again began the sale of intoxicating liquors, and appellant thereupon instituted his suit to forfeit the original lease from Evans, and an adverse judgment in his suit as then pending was reversed on appeal by this court, as will appear from our opinion published in 144 S. W. 1041. Appellant thereupon amended his petition, and a trial was again had, in which he suffered an adverse verdict and judgment from which he has again appealed, and we are now called upon to review the proceedings of the last trial.

It should be further stated that in November, 1908, some two months before the conveyance from Evans to appellant, the Ft. Worth Driving Club made a sublease for one year of the premises in controversy to one T. W. Patterson, who was given certain control of the premises not now necessary to specify. It appears that the Fair Association continued its exhibition in May, 1909, until the expiration of the two weeks authorized under its lease from the Driving Club, which was about the 22d day of May, 1909. The Fair Association, however, by the permission of T. W. Patterson, and with the knowledge of the Ft. Worth Driving Club, continued its exhibition from day to day until the 12th day of June, 1909, and it is admitted that during this period, to wit, from May 22, 1909, to June 12, 1909, the Fair Association from day to day continued the sale of intoxicating liquors. It is upon this later violation of the terms of the original lease from Evans, as well also as upon the sublease to Patterson, that appellant now bases his right to a forfeiture of the lease. It should be further stated that the sublease to Patterson was not set up by appellant as a ground of recovery until the filing of an amended petition in 1911, several years after the lease to Patterson had expired. It was also agreed upon the trial by counsel for both parties hereto that "there was whisky being sold there [on the premises in controversy] after the dismissal of the case by the Court of Appeals, but that defendant did not permit it." The following further agreement appears in the statement of facts, viz.: "It is considered that it is part of the agreement, with reference to the sale of intoxicating liquors after the 22d of May, it is not contended by the plaintiff Johnson that whisky was sold by any consent or permission of the Driving Club but the contention of plaintiff on that point is that they failed to take any steps to prohibit it."

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

[1] It must be conceded that the covenants in the original lease from Evans are such as run with the land, and that Johnson, as the assignee of Evans by the terms of the lease, has a right to declare a forfeiture of the estate thereby granted to the Ft. Worth Driving Club, upon sufficient proof of a violation of the covenants. On the issues presented the verdict was in favor of the lessee, appellee herein, and whether or not this verdict and the judgment in appellee's favor following it is to be approved depends, we think, under the admitted facts largely, if not altogether, upon the construction to be given the terms of the covenant alleged to have been broken. The language of the covenant under consideration is: "It is, however, understood that during the existence of this lease, no gambling such as is prohibited by law is to be permitted on said premises by said lessee, nor any intoxicating liquors of any sort be permitted to be sold on said premises by said lessee or other persons during the continuance of said lease."

[2] What is the proper construction to be given to the term "permit" used in the covenant? If it is to be given the meaning that the lessee was at all events, whether with or without knowledge, to prevent the sale of intoxicating liquors upon the leased premises, then the verdict and judgment should have been for appellant, for it is admitted that intoxicating liquors were in fact sold upon the leased premises during the period covered by appellant's allegations herein. While definitions and applications of the term "permit" may be found which will support such construction, we think that such construction should not be given the covenant. It is a well-established rule that forfeitures are not favored in the law, and it seems to us that it would be unreasonably harsh to say that appellee should forfeit all the rights acquired under its lease, which are conceded to be valuable, merely because some unauthorized person or persons may have sold intoxicating liquors upon the premises one or more times without either the knowledge or consent of appellee. In a suit on a liquor dealer's bond for permitting another to give liquor to a minor in his place of business, our Supreme Court held that there was no breach of the bond where it appeared that the seller in good faith believed the minor to be over age. See Holly v. Simmons, 99 Tex. 230, 89 S. W. 776. Some of the cases go yet farther, and hold that the term "permit" implies an affirmative assent. See State v. Abrahams, 6 Iowa, 117, 71 Am. Dec. 399; City of Chicago v. Stearns, 105 Ill. 554; Board of Education v. Board of Education, 3 Ohio S. & C. P. Dec. 70, 71; Aull v. Columbia Ry. Co., 42 S. C. 431, 20 S. E. 302–304; In re Thomas (D. C.) 103 Fed. 272.

[3] But it is admitted, as before stated, that in the case before us appellee gave no such assent. The principal contention seems to be, however, that a forefeiture should be declared because of a failure on appellee's part to take steps to prevent the inhibited sales. The court in its charge very plainly placed upon appellee the duty of exercising reasonable diligence to ascertain and prevent the sales complained of, and the jury evidently found that this duty had been discharged. The evidence is undisputed that in the lease to Patterson, who had immediate charge of the premises at the time herein under consideration, the appellee inserted an express provision inhibiting the sale of intoxicating liquors, and Patterson testified that in granting the Ft. Worth Fair Association permission to remain from day to day after May 22, 1909, the officials of the association were expressly told that no gambling or selling of liquors was permitted. Patterson testified that during that time he was engaged at or near the entrance to the grounds, and knew nothing of the sale of liquors as they occurred, and, in the absence of a knowledge of the sales, we cannot say that as a matter of law appellee under the circumstances was bound to anticipate that the Fair Association would engage in the prohibited traffic. It is to be borne in mind in this connection, also, that the judgment of this court had just been rendered, which was to the effect that the Driving Club was not entitled to enjoin the Fair Association from the sale of liquors, and this judgment had not been disturbed until long after June 12, 1909, when the Fair Association ceased entirely to occupy the premises. We think, under such circumstances, it was properly a question for the jury to determine whether appellee in good faith did all that was required by the exercise of reasonable care. We, accordingly, hold that the court committed no error in refusing to give appellant's requested peremptory instruction, as complained of in the first assignment of error.

[4] Appellant further urges in different forms that the lease under consideration became forfeited by reason of the sublease to T. W. Patterson. David Evans, the original lessor, testified that this lease to Patterson was made by the Ft. Worth Driving Club without his knowledge or consent, and our statute inhibits such a lease. See Revised Statutes 1911, art. 5489. But the article of the statute does not declare that a violation of its terms shall operate as a forfeiture of the rights of the original lessee. So that the only support for a forfeiture on this ground must be predicated upon the assumption that the statute cited should be read into the original lease from David Evans, and the terms of the lease declaring a forfeiture for a violation of any of its covenants held to be operative. We are not, however, willing to apply this principle in aid of the forfeiture herein sought. It is to be borne in mind that the lease to Patterson, and hence the asserted breach of covenant there-

by occasioned, occurred, as before stated, several months before appellant ever acquired any interest in the premises in controversy, yet thereafter neither Evans, nor appellant after his acquisition, is shown to have made any complaint until long after the expiration of Patterson's term, nor has it been made to appear that appellant, or the estate which he has in reversion, has been in any manner injured. So that to now declare a forfeiture because of the lease to Patterson would be in effect but to inflict a punishment upon a technical wrongdoer rather than to afford equitable relief to appellant, who now complains. We accordingly overrule all assignments involving this question.

[5] Complaints are also made of the court's charge and errors also assigned to the refusal of certain special instructions, but we hardly think it necessary to discuss them. We think it will be sufficient to say, in addition to what we have already said, that the charge of the court seems unobjectionable and very liberal to appellant in its submission of the issues, and that it sufficiently embodied the questions presented in the special charges, in so far as they were correct.

We conclude that no reversible error has been shown, and that the judgment should be affirmed.